Filed 11/22/22 P. v. Session CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075808 |
| v. | (Super.Ct.No. FVI023867) |
| JEROME CORNELL SESSION, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Eric M. Nakata, Judge. Reversed.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Kamala D. Harris, Attorneys General, Lance E. Winters and Dane R. Gillette, Chief Assistant Attorneys General, Charles C. Ragland and Julie L. Garland, Assistant Attorneys General, Donald W. Ostertag, Robin Urbanski and Heidi T. Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2006, defendant Jerome Session and his codefendant Shamar Thornton robbed a convenience store, during which Thornton shot and killed the clerk. They were separately tried in 2009; a jury found Session guilty of first degree of murder (Pen. Code, §§ 187, subd. (a), 189)[1] and robbery (§ 211), along with a true finding on a felony-murder special circumstance allegation. In addition, defendant admitted he had previously been convicted of a serious or violent felony under the Three Strikes law (§ 667, subds. (b)-(i)). Defendant was sentenced to life without the possibility of parole (LWOP). (§ 190.2, subd. (a)(17)(A).) Defendant appealed that conviction; we affirmed the convictions for murder and robbery but we reversed the special circumstance finding due to the court's failure to read CALCRIM No. 703 and remanded for further proceedings and resentencing. Following retrial, the special circumstance allegation was again found true, defendant was resentenced to LWOP, and he appealed that finding again. On appeal, we affirmed the special circumstance finding.

In 2019, following the enactment of section 1170.95 pursuant to passage of Senate Bill No. 1437 (SB 1437), defendant filed a petition for resentencing. That petition was denied without issuing an order to show cause, and defendant appealed that ruling. We affirmed that order, with the majority holding that the felony-murder special circumstance findings conclusively established that he was not eligible for relief.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

While his appeal was still pending review, the California Supreme Court issued its decision in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*), and issued an order that we vacate our decision and reconsider it in light of the decision in *Strong*. We gave the parties an opportunity to file supplemental briefs, which they have now done, and we now reverse.

## BACKGROUND

1. *Facts Pertaining to the Crime*

We take the facts of the crime from the original opinion on direct appeal, *People v. Session,* February 9, 2011, E049939, nonpublished opinion.

Shortly before 1:00 a.m. on March 21, 2006, two Black males, later identified as Thornton and Session, walked into the 7-Eleven store on the corner of Highway 18 and Apple Valley Road near Apple Valley. Thornton and Session forced Gould, the store clerk, to give them all the money that was in the store's two cash registers, a total of $62. They then forced Gould into a back storage room, where Thornton shot and killed him.

The robbery was captured on store surveillance cameras, but the murder of Gould in the back storage room was not. The surveillance videos, which were played for the jury, showed Thornton and Session forcing Gould to open the store's two cash registers, with Thornton pointing a gun at Gould. The videos also showed the two men forcing Gould toward the back of the store, out of the range of the surveillance cameras. Gould was found dead in the back storage room. He had been shot 9 to 10 times with a nine-millimeter semiautomatic handgun, and died at the scene.

3

On March 25, two days after surveillance videos and still photographs of the suspects were released to the media, Thornton was taken into custody and Session turned himself in. That same day, Session waived his *Miranda*[2] rights and spoke to detectives, both individually and in a joint interview with Thornton. Session's individual interview and joint interview with Thornton were recorded on DVD and admitted into evidence at Session's trial.

During the interviews, Session told detectives that he and Thornton were driving around in Session's car shortly before the robbery and were talking about the fact they needed money. Thornton needed money to help his girlfriend move, and Session had lost his job and owed money on his car. Around 40 minutes before the robbery, they stopped at another store and Thornton purchased gloves for the two of them. They later drove by the 7-Eleven store and decided to rob it when they saw that no one was in the store.

Session parked his car behind the 7-Eleven store. When Session and Thornton entered the store, the clerk was in the first aisle, sweeping with a broom. Thornton walked up to the clerk while Session was in another aisle, and Session overheard the clerk say something like, "okay, okay, I'm gonna go get it . . . ." At that point, Session looked down the first aisle and saw that Thornton had a gun and was pointing it at the clerk.

Session claimed he did not know Thornton had a gun until he saw him pointing it at the clerk. He thought they were going to commit a robbery using their "hands."

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

Session admitted, however, that he had previously heard of Thornton having guns. He also said he could have left the store when he saw Thornton pointing a gun at the clerk, but he decided to continue with the robbery.

Session admitted he then grabbed the clerk by the back of his shirt and took him to the store's two cash registers. There, the clerk took the cash out as directed, and Session put the cash in his pocket. Thornton then began asking the clerk where the surveillance tape was. The clerk said he did not have access to the tape. The owner of the store testified that the computer on which the surveillance videos were recorded was in a locked office in the store which the store clerks could not access.

Session forced the clerk to the back storage room, and Thornton followed. Session claimed he intended "to just take [Gould] to the back, probably just sock on him a couple times, just so [he and Thornton could] get enough time to get away or somethin' like that." In the storage room, Session pushed Gould against a wall and heard a gunshot as he raised his hand to hit Gould. He claimed the first shot grazed his arm. He walked out of the room after he heard the first shot, then he heard "[a]t least" seven more shots. He and Thornton then ran out of the store. Inside Session's car, Session and Thornton split the money they had stolen, and Session complained he had been hit with a bullet. Thornton told Session he was sorry Session had been hit and, if they got caught, he (Thornton) would take the "rap" for what had happened.

Session admitted Gould was "very cooperative" and, on the way to the storage room, was pleading with Session and Thornton not to hurt him. After they left the store,

5

Session dropped Thornton off in "the flats," then went to a friend's house. Video surveillance tapes from another 7-Eleven store on Bear Valley Road showed Session in that store shortly after 2:00 a.m., purchasing a 40-ounce beer and cigars. Session admitted he was at the other 7-Eleven store shortly after the robbery.

Immediately after their joint interview, Session and Thornton spoke with each other. They were friendly toward each other, and Session showed no signs of animosity toward Thornton for his having shot and killed Gould. They talked about where the police had been looking for them and who had given information to the police concerning their whereabouts. Session also indicated he had turned himself in because others had been "runnin' their mouth[s]."

Following his conviction, defendant appealed, challenging the trial court's failure to give CALCRIM No. 703 relating to the special circumstance finding, and the imposition of a $10,000 parole revocation restitution fine. (*People v. Session* (Feb. 9, 2011) E049939, [nonpub. opn.].) We affirmed the murder and robbery convictions but reversed the special circumstance finding and remanded the matter for further proceedings and resentencing. (*Ibid*.) On remand and retrial of the special circumstance allegation, the jury again returned a true finding and defendant was resentenced to a term of LWOP.[3] Defendant again appealed. (*People v. Session* (Sept. 14, 2012) E053942, [nonpub. opn.].) We affirmed the special circumstances finding because other

---

[3] On resentencing, the parole revocation restitution fine pursuant to section 1202.45 was not imposed.

6

instructions amply covered that issue. (*People v. Session, supra*, E053942.) The Supreme Court denied review of that decision.

On June 17, 2019, following the enactment of section 1170.95, defendant filed a petition for resentencing. The trial court denied the petition on August 28, 2020, and defendant appealed that ruling. On appeal, we affirmed the trial court's finding defendant was ineligible for relief due to the special circumstances finding. Defendant's petition for review was granted and held, pending the decision in *Strong, supra,* 13 Cal.5th 698, and upon issuance of the decision, we have vacated our opinion for reconsideration in light of that opinion.

## DISCUSSION

Under section 1172.6, the trial court must vacate a first-degree murder conviction that was based on a felony-murder theory, unless the petitioner either (1) was the actual killer, (2) had the intent to kill and aided and abetted the commission of first-degree murder, or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 1172.6, subd. (d)(3), incorporating § 189, subd. (e).)

A felony-murder special circumstance, however, requires that the defendant either (1) was the actual killer, (2) had the intent to kill and aided and abetted the commission of first-degree murder, or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 190.2, subds. (a)(17), (b)-(d).) Here, defendant was not the actual shooter.

7

While this appeal was pending, the Supreme Court in *Strong* held that *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) "substantially clarified" the requirements of a felony murder special-circumstance finding. (*Strong*, *supra*, 13 Cal.5th at p. 706.) Therefore, it concluded a felony murder special-circumstance finding made before *Banks* and *Clark* were decided does *not* conclusively establish ineligibility for relief under section 1172.8. (*Strong*, *supra*, at pp. 710-720.)

The People concede that, because the felony-murder special-circumstance finding in appellant's case was made before *Banks* and *Clark*, that finding does not, in and of itself, render him ineligible for resentencing. Therefore, the trial court's order summarily denying appellant's petition must be reversed and this matter remanded for further proceedings consistent with the holding *Strong*.

Because the trial court denied the petition based on the felony-murder special circumstances, it has not yet ruled on whether the petition otherwise stated a prima facie case.

### DISPOSITION

The order appealed from is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____

P. J.

We concur:

McKINSTER _____

J.

RAPHAEL _____

J.

8